***********
The undersigned have reviewed the prior Opinion and Award of Deputy Commissioner Ledford based upon the record of the proceedings before former Deputy Commissioner Hoag and the briefs and arguments of the parties. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except that plaintiff has shown good ground to reconsider the amount of damages awarded to plaintiff.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties before the Deputy Commissioners as:
 STIPULATIONS
1. These actions were filed pursuant to the Tort Claims Act, N.C. Gen. Stat. § 143-291 et seq. The Industrial Commission has jurisdiction to hear these claims.
2. The deposition testimony of L. Andrew Goad, DDS, Margo Burr, M.A., and Antonio Puente, Ph.D. is a part of the evidentiary record, along with additional documents submitted via the stipulation of the parties after the hearing before the Deputy Commissioner.
3. The following Exhibits were identified and submitted via the stipulation of the parties at the time of the hearing before the Deputy Commissioner:
 Plaintiff's Exhibit Nos. 1 through 3 — Photographs of the Accident Scene
 Plaintiff's Exhibit No. 4 — Photograph of the Vehicle (driven by Kimberly Lyda)
Plaintiff's Exhibit Nos. 5 through 10 — Photographs of Autumn
Plaintiff's Exhibit No. 11 and 12 — Photographs of Cassie
 Plaintiff's Exhibit No. 13 and 14 — Photographs of Edward Lyda, Jr.
Plaintiff's Exhibit No. 15 — Accident Investigation Report
Plaintiff's Exhibit No. 16 — Custody Order
Plaintiff's Exhibit No. 17 — Autumn's Medical Records
Plaintiff's Exhibit No. 18 — Brittany's Medical Records
Plaintiff's Exhibit No. 19 — Cassie's Medical Records
 Plaintiff's Exhibit No. 20 — Edward Lyda Jr.'s Medical Records
Plaintiff's Exhibit No. 21 — Kimberly's Medical Records
(Defendant's Exhibit No 1 was identified at the hearing, but not offered or received.)
The following additional Plaintiff's Exhibits were stipulated by both parties and mailed to The Commission with a cover letter on April 4, 2000:
 Plaintiff's Exhibit No. 22 — Custody Order for Edward Lyda Jr.
 Plaintiff's Exhibit No. 23 — Marriage License of Edward D. Lyda, Sr. and Kimberly Anne Lively
 Plaintiff's Exhibit No. 24 — Birth Certificate of Edward Lyda Jr.
 Plaintiff's Exhibit No. 25 — Death Certificate of Kimberly A. Lyda
 Plaintiff's Exhibit No. 26 — Birth Certificate of Autumn Marie Lively
 Plaintiff's Exhibit No. 27 — Birth Certificate of Brittany Lynn Lively
 Plaintiff's Exhibit No. 28 — Birth Certificate of Cassie Annette Lively
 Plaintiff's Exhibit No. 29 — Additional Medical Records of Edward Lyda Jr.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows
 FINDINGS OF FACT
1. This claim and those consolidated with it were brought pursuant to the Tort Claims Act on behalf of four minor children and one adult, who were injured in an accident, which occurred on January 22, 1997 in Transylvania County. Three of the minors, Brittany Lively, Cassie Lively, and Autumn Lively, were the children of Kimberly Lyda, who is now deceased. Kimberly Lyda was also injured in the accident. The fourth child, Edward Lyda, Jr. is the son of Edward D. Lyda, Sr., who was married to Kimberly Lyda.
2. The father of the three Lively children, Carroll Lively, was killed in a vehicular accident in August 1996. At that time, Carroll was divorced from Kimberly, and the three minor children lived with her. Kimberly married Edward Lyda on December 7, 1996. On January 22, 1997, the three minor Lively children lived with Kimberly and Edward along with his son, Edward, Jr.
3. The accident that is the subject of these claims occurred at approximately 4:10 p.m. on January 22, 1997 in Transylvania County east of the Brevard city limits on N.C. Highway 280 at the intersection with McGuire Road. At that time, a school bus was stopped facing west in the right-hand lane of Hwy. 280 to drop off children, and had extended the flashing stop signs. Kimberly Lyda, now deceased, had stopped her vehicle on McGuire Road facing Highway 280, to pick up her three daughters and her stepson, who were being dropped off the school bus.
4. As the children were departing from the school bus and crossing the road to their mother's car, a vehicle owned by the N.C. Wildlife Resource Commission, and driven by their employee, Ishmel Creson was traveling east on Highway 280. Mr. Creson was driving a large truck pulling a flatbed trailer loaded with a backhoe. At this location, Highway 280 has five lanes, two in either direction and one center turn lane. A vehicle had stopped in the center lane eastbound on Hwy. 280 and a vehicle had stopped in the outside eastbound lane on Hwy. 280, which left only the lane between them open for through traffic. It had been raining and the pavement was wet.
5. As Creson's truck approached, he attempted to change lanes and applied the brakes. The brakes did not operate properly and the truck jackknifed, sliding into the vehicle stopped in the center turn lane, and knocking it forward. The trailer turned onto its side and the backhoe slid into the school bus. Although Brittany Lively was getting off of the bus to cross the street with the other children, she had returned to retrieve a hat for a little boy and was on the bus at the time it was struck causing her to fall and hit her head. The truck continued sliding across the highway and struck and rolled onto Kimberly Lyda's vehicle. As the truck slid, it also struck Autumn Lively and Cassie Lively, as they were crossing the street. Edward Lyda, Jr. was injured as he jumped to get out of the way and landed in a ditch.
6. Sergeant John Dunn of the North Carolina Highway Patrol investigated the accident, along with three other troopers and two DMV officers. One of the investigators, Trooper Grayson, was a specialist in accident reconstruction. The investigators concluded that the brakes on the truck and trailer owned by defendant were out of tolerance and the inspection on the trailer had expired.
7. The driver of the truck, Ishmal Creson, an employee and agent of the N.C. Wildlife Resource Commission, was negligent in that he failed to keep a reasonable lookout to observe the vehicles stopped in the highway ahead of him in sufficient time to slow or stop his vehicle to avoid a collision. He failed to keep this truck under proper control and operate it in a safe manner, as to avoid the collision. He operated the truck and trailer at a speed that was greater than was reasonable considering the rainy conditions and the fact that the brakes were not in proper working order.
8. The N.C. Wildlife Resource Commission had a duty to keep the truck and trailer properly maintained and knew or should have known that the brakes were defective and should have taken steps to repair the same prior to the operation of the vehicle on January 22, 1997.
9. On the date of the accident, Brittany Lively was ten years old, having a birth date of July 24, 1986. She was on the bus when it was struck by the backhoe, which caused her to fall and strike her head. She apparently lost consciousness for a few seconds.
10. On the date of the accident, Autumn Marie Lively was eight years old, having a birth date of September 29, 1988. She was crossing the highway at the time of the accident, and was struck and pinned between the truck and her mother's car. She suffered extensive abrasions and bruising on her left thigh and her buttocks and cuts to her forehead.
11. On the date of the accident, Cassie Lively was six years old, having a birth date of January 14, 1991. As she was crossing the highway, she was struck by the truck and suffered cuts to her forehead and swelling and bruising around her right eye and abrasions to her right foot and leg.
12. On the date of the accident, Edward Lyda, Jr. was six years old, having a birth date of August 24, 1990. He was crossing the highway towards his stepmother's vehicle when the accident occurred. He attempted to jump out of the way and landed in a ditch. He sustained a deep laceration to the back of his head and a fractured left clavicle.
13. Autumn Lively, Cassie Lively and Edward Lyda Jr. were all taken to Transylvania Community Hospital Emergency Room. Autumn and Cassie both had apparent head injuries. Due to concerns over the possible seriousness of their injuries, Autumn and Cassie were transferred to Memorial Mission Hospital in Asheville.
14. Of the three sisters, it appears that Autumn had the most extensive physical injuries. She had multiple abrasions to her left leg and buttocks, and bruising to her left thigh. She also had a depressed area of skin, which was deeply bruised on her right forehead, which was tender to the touch. CT scans of her head and abdomen were within normal limits. The final assessment at Memorial Mission Hospital was superficial abrasions and lacerations and she was released the next day, January 23, 1997.
15. Following the accident, Autumn, along with her sisters, received counseling from Margo Burr, MA and Megan Batten, LPC. Autumn was the only child for which Ms. Burr made a diagnosis, which was adjustment disorder. As of July 1, 1997, Ms. Burr noted that the children seemed to have made remarkable recovery from the trauma of the accident, though they all remained closed-mouth about it. She believed that it was important for Autumn's mother and stepfather to participate in the therapy as a family as well.
16. On November 5, 1997, Autumn's mother, Kimberly Lyda, died as a result of injuries sustained from a self-inflicted gunshot wound of October 31, 1997. Thereafter, Cassie, and her two sisters, were placed in the custody of and remain with the maternal grandmother, Judith Sebrell, who is also a registered nurse. Ms. Sebrell and her granddaughters live in Ivanhoe in Sampson County in eastern North Carolina.
17. Since the accident, Autumn has suffered from nightmares, and at the time of the hearing had such nightmares about twice a week. When riding in a car with her grandmother, she is sometimes frightened, especially if it is raining or a truck is approaching. She and her sister, Cassie, may admonish their grandmother to slow down.
18. Autumn was evaluated by Antonio Puente, Ph.D. a neuropsychologist, who saw her and her sisters in April and May 1999, and has seen them in follow-up with the grandmother. From his initial evaluation, Dr. Puente concluded that Autumn most likely had suffered a very minor closed head injury, with post-concussive syndrome which had resolved. He was also concerned that she had significant emotional deficits.
19. Dr. Puente recommended follow-up, and has seen the three sisters and their grandmother on several occasions. At the visit of December 4, 1999, Dr. Puentes noted that Autumn was doing much better and moving forward on several fronts.
20. The medical expenses incurred for Autumn's physical and psychological treatment as a result of the accident of January 22, 1997 total about $10,900.00 Of this amount, about $2,400.00 was the cost for the initial evaluation conducted by Dr. Puente in April and May 1999. At the time he testified in April 2000, Dr. Puente estimated that the total cost for recommended future counseling for Autumn and her two sisters would be in the range of $10,000.00 to $15,000.00.
21. Considering her age and the nature and extent of her injuries, the amount of $68,000.00 is the reasonable value of the damages sustained by Autumn Lively, as a result of defendant's negligence, including the medical expenses incurred or to be incurred, her physical injury, her psychological and emotional injury, and her pain and suffering.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following
 CONCLUSIONS OF LAW
1. The negligence of defendant and the employee(s) of defendant caused the accident of January 22, 1997, which resulted in the personal injuries sustained by Autumn Lively. Therefore, she is entitled to recover damages pursuant to N.C. Gen. Stat. § 143-291 et seq.
2. The sum of $68,000.00 is reasonable and appropriate as an award of damages for the medical expenses incurred, the physical injury, the psychological and emotional injury and the pain and suffering sustained by Autumn Lively.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following
 ORDER
1. IT IS HEREBY ORDERED that defendant shall pay damages in the amount of $68,000.00 (Sixty-eight thousand dollars) for the use and benefit of Autumn Lively. Since Autumn Lively is a minor, such payment is to be made to the Clerk of Court of Sampson County to be held in trust for the use and benefit of Autumn Lively, subject to any attorney's fee that may be released by the Clerk of Court to plaintiff's counsel.
This the ___ day of March 2002.
 S/_____________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________________________ BERNADINE S. BALLANCE COMMISSIONER
S/_____________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER